IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACKIE L. WILDER,

        Plaintiff,

v.                                               Civil Action No: 3:16cv766

BANK OF AMERICA, NATIONAL ASSOCIATION,

SERVE:    CT Corporation System, Registered Agent
                4701 Cox Road, Suite 285
                Glen Allen, VA  23060

EQUIFAX INFORMATION SERVICES, LLC,

SERVE:    Corporation Service Company, Registered Agent
                Bank of America Center 16th Floor
                1111 E. Main St.
                Richmond, VA 23219

TRANS UNION, LLC,

SERVE:    Corporation Service Company, Registered Agent
                Bank of America Center 16th Floor
                1111 E. Main St.
                Richmond, VA 23219

        Defendants.

## COMPLAINT

Plaintiff, **JACKIE L. WILDER** (hereafter "Plaintiff" or "Ms. Wilder"), by counsel, for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual, statutory and punitive damages, costs and attorney's fees pursuant to 15 U.S.C. §1681 *et seq.* (Federal Fair Credit Reporting Act of "FCRA").

## JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p and 28 U.S.C. §1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) inasmuch as all of the Defendants maintain registered offices within the boundaries of the Eastern District of Virginia, Richmond Division.

## PARTIES

4. The Plaintiff, **JACKIE L. WILDER**, ("Plaintiff" or "Ms. Wilder") is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

5. Defendant, **BANK OF AMERICA, NATIONAL ASSOCIATION** ("*BOA*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered office in Glen Allen, Virginia. At all times relevant to this action, Defendant *BOA* was credit lender and "furnisher" as governed by the FCRA.

6. **EQUIFAX INFORMATION SERVICES, LLC** ("*Equifax*") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered office in Richmond, Virginia.

7. *Equifax* is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). *Equifax* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

8. *Equifax* disburses such consumer reports to third parties under contract for monetary compensation.

9. **TRANS UNION, LLC** ("*Trans Union*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered office in Richmond, Virginia.

10. *Trans Union* is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f). *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d) to third parties.

11. *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

12. Ms. Wilder's estranged husband, Duane Wilder, passed away on August 13, 2015. At the time of Mr. Wilder's passing, Ms. Wilder had been separated from her husband for several years and each were living in different residences.

13. After Mr. Wilder's death, Ms. Wilder's son and daughter were cleaning out their father's apartment and came upon documents and information regarding a Bank America credit card that had both Mr. and Ms. Wilder's name on it. Thereafter, Ms. Wilder's son and daughter brought it to Ms. Wilder's attention. Years of *BOA* statements were found with payment notations made by her late husband. The statements were sent to a P.O. Box solely in her husband's name and monitored by only her husband.

14. Prior to this time. Ms. Wilder was unaware of a Bank of America credit card account in her name.

15. Thereafter, Ms. Wilder notified *BOA* of her Husband's death on or about September 9, 2015.

16. On or about September 18, 2015, **BOA** forwarded a letter to the Estate of Duane Wilder to request a copy of his death certificate.

17. On or about September 23, 2015, Ms. Wilder contacted **BOA** and advised that she was previously unaware of the account. The **BOA** representative advised Ms. Wilder that the death certificate was for insurance purposes and that she was the sole borrower on the account. At the time of this call the **BOA** representative changed the email address on the account from Mr. Wilder's to Ms. Wilder's email address. (Ms. Wilder had never before received emails with regard to the **BOA** account). At some point, **BOA** deleted Mr. Wilder's name from the account.

18. Ms. Wilder was thereafter transferred to another **BOA** representative who informed Ms. Wilder that she was the primary cardholder and therefore responsible for the charges on the account. Ms. Wilder again explained that she was not previously aware of the account, had never had a credit card for this account and that she had never made any charges on the account. During this phone call, the **BOA** representative coerced Ms. Wilder to make a $400 payment on the account because the account was delinquent.

19. On or about December 6, 2015, Ms. Wilder forwarded a dispute letter to **Equifax and Trans Union** to advise the CRAs that she she did not open the **BOA** account and that she just learned of the account after the death of her husband.

20. On or about December 22, 2015, **Trans Union** forwarded its investigation results to Ms. Wilder. **Trans Union** advised that new information had been provided by **BOA**, however the account was reporting derogatorily as past due in the amount of $694,

with a total balance of $17,336 owing on the account. *Trans Union* was further reporting that the account was the "individual" responsibility of Ms. Wilder.

21. On or about December 28, 2015, *Equifax* forwarded the results of its Investigation to Ms. Wilder. *Equifax* advised that it had verified with the creditor that the account belonged to Ms. Wilder. Further, the account was reporting derogatorily as past due in the amount of $694, with a total balance of $17,336 owing on the account.

22. Ms. Wilder disputed the *BOA* account directly with *BOA* multiples times since September, 2015.

23. The *BOA* reporting was inaccurate. Ms. Wilder did not open the account and never agreed to be personally liable for the repayment of the *BOA* account.

24. *Equifax and Trans Union* had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the inaccurate *BOA* account.

25. *Equifax and Trans Union* prepared and published to third parties' multiple inaccurate consumer reports about Ms. Wilder that reflected the derogatory *BOA* account.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (EQUIFAX and TRANS UNION)

26. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

27. *Equifax* and *Trans Union* each violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Wilder's credit reports and credit files it published and maintained concerning Ms. Wilder.

5

28. As a result of *Equifax* and *Trans Union's* violations of 15 U.S.C. §1681e(b) Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

29. The violations by *Equifax* and *Trans Union* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax* and *Trans Union* were negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

30. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681i(a)(1)
(EQUIFAX and TRANS UNION)**

31. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

32. *Equifax* and *Trans Union* each violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Ms. Wilder's credit file.

33. As a result of *Equifax* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(1), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

34. The violations by *Equifax* and *Trans Union* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax* and *Trans Union* were negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

35. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(2)(A)
### (EQUIFAX and TRANS UNION)

36. Ms. Wilder realleges and incorporates all other factual allegations as set forth in the Complaint.

37. *Equifax* and *Trans Union* each violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide *BOA* with all the relevant information regarding Ms. Wilder's disputes.

38. As a result of *Equifax* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(2), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

39. The violations by *Equifax* and *Trans Union* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax* and *Trans Union* were negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

40. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(4)
### (EQUIFAX and TRANS UNION)

41. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

42. *Equifax* and *Trans Union* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Ms. Wilder.

43. As a result of *Equifax* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(4), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

44. The violations by *Equifax* and *Trans Union* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax* and *Trans Union* were negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

45. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(5)(A)
### (EQUIFAX and TRANS UNION)

46. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

47. *Equifax* and *Trans Union* each violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Ms. Wilder's credit file or modify the item of information upon a lawful reinvestigation.

48. As a result of *Equifax* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(5)(A), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

49. The violations by *Equifax* and *Trans Union* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Equifax* and *Trans Union* were negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

50. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(A)
## (BANK OF AMERICA)

51.  Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

52.  On at least one occasion within the past two years, by example only and without limitation, **BOA** violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Wilder's disputes.

53.  When Ms. Wilder mailed her detailed, written disputes and enclosures to the consumer reporting agencies ("CRAs"), the CRAs use a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as **BOA**. It is an automated system and the procedures used by the CRAs are systemic and uniform.

54.  When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

55.  The ACDV form is the method by which **BOA** has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

56.  It is extremely rare – certainly less than 1% of the time – that **BOA** will receive a consumer's dispute sent through the CRAs other than through the e-Oscar system.

57.  On information and belief, Ms. Wilder alleges that to date **BOA** has never complained to the CRAs about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

58. If *BOA* receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

59. Based on the manner in which the CRAs responded to – or did not respond to – each of Ms. Wilder's disputes, representing that *BOA* had "verified" the supposed accuracy of its reporting, Ms. Wilder alleges that the CRAs did in fact forward Ms. Wilder's dispute via an ACDV to *BOA*.

60. *BOA* understood the nature of Ms. Wilder's disputes when it received the ACDVs from the CRAs.

61. When *BOA* received the ACDVs from the CRAs, it as well could have reviewed its own system and previous communications with Ms. Wilder regarding the disputed account.

62. Notwithstanding the above, *BOA* follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all *BOA* does is review its own internal computer screen for the account and repeat back to the ACDV system the same information *BOA* already had reported to the CRAs.

63. When *BOA* receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

64. As a result of *BOA*'s violations of 15 U.S.C. §1681s-2(b)(1)(A), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

11

65. The violations by **BOA** were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, **BOA** was negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

66. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

67. **BOA** was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Ms. Wilder's disputes.

68. **BOA** has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

69. On information and belief, Ms. Wilder alleges that the procedures followed regarding Ms. Wilder's FCRA disputes through e-Oscar were the procedures that **BOA** intended its employees or agents to follow.

70. On information and belief, Ms. Wilder alleges that **BOA**'s employee or agent did not make a mistake (in the way in which he or she followed **BOA**'s procedures) when he or she received, processed and responded to the CRAs ACDVs.

71. On information and belief, Ms. Wilder alleges that **BOA** has not materially changed its FCRA investigation procedures after learning of its failures in this case.

72. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from **BOA** in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(B)
## (BANK OF AMERICA)

73. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

74. On one or more occasions within the past two years, by example only and without limitation, **BOA** violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

75. As Ms. Wilder detailed in Count Six, **BOA** has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

76. **BOA** is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

77. **BOA** does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

78. **BOA** understood that Ms. Wilder's disputes stated that she did not open the account and only learned of the **BOA** account after her husband's passing.

79. Nevertheless, **BOA** ignored such information and instead simply regurgitated the same identifying information it had previously reported to the CRAs.

80. As a result of **BOA**'s violations of 15 U.S.C. §1681s-2(b)(1)(B), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

81. The violations by **BOA** were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In

the alternative, *BOA* was negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

82. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *BOA* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b) (1)(C) and (D)
### (BANK OF AMERICA)

83. Ms. Wilder realleges and incorporates all other factual allegations set forth in the Complaint.

84. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *BOA* violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2b(1)(C) and (D) by publishing the *BOA* account within Plaintiff's credit file with the CRAs without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each other credit reporting agency.

85. As a result of *BOA*'s violations of 15 U.S.C. §1681s-2(b)(1)(B), Ms. Wilder suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

86. The violations by *BOA* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *BOA* was negligent, which entitles Ms. Wilder to recovery under 15 U.S.C. §1681o.

87. Ms. Wilder is entitled to recover actual damages, statutory damages, costs and attorney's fees from *BOA* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Ms. Wilder demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,

**JACKIE L. WILDER,**

By *[signature]*
Counsel

Leonard A. Bennett, VSB#37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com

Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: srotkis@clalegal.com

Craig C. Marchiando, VSB# 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: craig@clalegal.com

*Counsel for Plaintiff*